IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC HAVARD,                            : Civil No. 1:25-CV-1858
                                        :
     Plaintiff,                         :
                                        :
          v.                            :
                                        : (Chief Magistrate Judge Bloom)
COMMISSIONER OF                         :
SOCIAL SECURITY,                        :
                                        :
     Defendant.                         :

## MEMORANDUM OPINION

## I.    Introduction

Eric Havard filed an application under Title XVI of the Social Security Act for supplemental security income on December 1, 2022. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Havard was not disabled from the date of his application through the date of the ALJ's decision, September 19, 2024.[1]

Havard now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to

---

[1] Tr. 21-40.

support a conclusion,'"[2] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.   Statement of Facts and of the Case

Eric Havard filed for supplemental security income, alleging disability due to depression, bipolar disorder, post-traumatic stress disorder ("PTSD"), night terrors, and various physical impairments.[3] Havard was 40 years old at the time he filed his application, had at least a high school education, and had past relevant work as a sales representative.[4]

The administrative record in this case reveals that Havard treated with a behavioral health provider from May of 2021 through October of 2022 for his anxiety and PTSD.[5] During this time, Havard reported difficulty sleeping but had a stable mood and denied significant

---

[2] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

[3] Tr. 68.

[4] Tr. 33, 68.

[5] Tr. 312-27.   Because Havard's appeal focuses only on the ALJ's treatment of his mental health impairments, we will forego a discussion of Havard's physical impairments.

2

depression and anxiety.[6]   Mental status examinations at these visits documented limited to fair insight and judgment but were otherwise largely unremarkable, demonstrating relevant though content, clear and coherent speech, intact memory, and linear thought processes.[7]

In April of 2023, Havard underwent a mental status evaluation with Dr. Theresa Havel, Ph.D.[8] He reported that he treated with therapy and medication in the past for his mental health issues and, at the time of the evaluation, went to counseling one time per month.[9]   He further reported difficulties with sleeping due to his pain, as well as nightmares, flashbacks, and intrusive thoughts.[10]   Havard also discussed his marijuana and alcohol use, and that he lost his license and was on probation.[11]  A mental status examination revealed fluent speech, goal-directed thought processes, a somewhat euthymic affect and mood with some irritation due to pain, intact memory, mildly impaired attention

---

[6] *Id.*
[7] *Id.*
[8] Tr. 444-52.
[9] Tr. 445.
[10] Tr. 445-46.
[11] Tr. 446.

and concentration due to pain, and fair insight and judgment.[12]   Based on this examination, Dr. Havel opined that Havard had moderate to marked limitations regarding his ability to understand, remember, and carry out complex instructions and moderate limitations in interacting with others.[13]

It is against the backdrop of this record that an ALJ held a hearing on Havard's disability application on June 3, 2024.[14]   Havard and a Vocational Expert ("VE") both appeared and testified at this hearing.[15] Following this hearing, on September 19, 2024, the ALJ issued a decision denying Havard's application for disability benefits.[16]   The ALJ first concluded that Havard had not engaged in substantial gainful activity since his application date, December 1, 2022.[17]   At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Havard suffered from several severe physical impairments, but that his

---

[12] Tr. 447-48.
[13] Tr. 450-51.
[14] Tr. 41-66.
[15] *Id.*
[16] Tr. 21-40.
[17] Tr. 26.

mental health impairments were nonsevere.[18]    At Step 3, the ALJ

concluded that none of these impairments met or equaled the severity of

a listed impairment under the Commissioner's regulations.[19]

Between Steps 3 and 4, the ALJ then concluded that Havard:

[H]a[d] the residual functional capacity to perform light work
as defined in 20 CFR 416.967(b) except the claimant must be
given the opportunity to alternate between sitting and
standing every 30 minutes. The claimant is limited to
occasional stooping, kneeling, crouching, and climbing on
ramps and stairs, but never crawling, and never climbing on
ladders, ropes or scaffolds. He must avoid unprotected heights
and dangerous moving machinery. He is limited to no more
than occasional use of foot controls. He can understand,
remember, and carry out simple instructions. He cannot
perform assembly line work or work that requires hourly
quotas. He can use judgment to make simple work-related
decisions.[20]

In    reaching    this    residual    functional    capacity    ("RFC")

determination, the ALJ considered the objective medical record detailed

above, the medical opinion evidence, and Havard's reported symptoms.

With respect to the medical opinion evidence regarding Havard's mental

health impairments, the ALJ considered the opinion of Dr. Richard

---

[18] Tr. 26-29.

[19] Tr. 29-30.

[20] Tr. 30.

Small, a state agency consultant, and found this opinion persuasive.[21] Dr. Small opined that Havard's mental health impairments were nonsevere, and that he experienced only mild limitations due to these impairments.[22] The ALJ reasoned that this opinion was supported by Dr. Small's review of the evidence and was consistent with the medical records showing a lack of mental health treatment, generally unremarkable examination findings, and a wide range of activities of daily living.[23]

The ALJ also considered Dr. Jennifer Croyle's opinion on reconsideration and found this opinion not persuasive.[24] Dr. Croyle opined that Havard had some moderate limitations in mental functioning, including in his abilities to understand, remember, and carry out detailed instructions.[25] She further opined that Havard could understand, retain, and follow simple instructions and could make

---

[21] Tr. 28.
[22] Tr. 70-71.
[23] Tr. 28.
[24] Tr. 29.
[25] Tr. 82.

simple decisions.[26]   The ALJ reasoned that this opinion was not supported by or consistent with unremarkable psychological findings in the record, a lack of treatment, and a wide range of daily activities.[27] However, despite finding this opinion unpersuasive, the ALJ appears to have incorporated some of Dr. Croyle's limitations into Havard's RFC assessment, including a limitation to simple instructions.

Finally, the ALJ considered the opinion of consultative examiner, Dr. Theresa Havel, and found this opinion unpersuasive.[28]   Dr. Havel found that Havard had moderate to marked limitations in his abilities regarding complex instructions and work-related decisions.[29]   The ALJ similarly reasoned that this opinion was inconsistent with the unremarkable psychological findings in the record and not supported by Dr. Havel's own examination.[30]

With respect to Havard's symptoms, the ALJ found that Havard's statements concerning the intensity, persistence, and limiting effects of

---

[26] Tr. 83.
[27] Tr. 29.
[28] *Id.*
[29] Tr. 450.
[30] Tr. 29.

his impairments were not entirely consistent with the medical evidence.[31] Havard testified that he experienced various limitations from his physical impairments, and that his PTSD and night terrors affected his ability to sleep.[32]  Havard agreed with the ALJ that his ability to work was mainly limited by his physical rather than his mental health impairments.[33]  The ALJ ultimately found Havard's testimony to be inconsistent with the objective clinical findings, reasoning that while Havard experienced significant limitations from his physical impairments, the record did not support greater limitations than those set forth in the RFC.[34]

Having made these findings, the ALJ found at Step 4 that Havard could not perform his past relevant work but found at Step 5 that he could perform the occupations of a routing clerk, collator operator, and mail clerk.[35]  Accordingly, the ALJ found that Havard had not met the

---

[31] Tr. 31.
[32] Tr. 49-55.
[33] Tr. 55.
[34] Tr. 32.
[35] Tr. 33-34.

stringent standard prescribed for disability benefits and denied his claim.[36]

This appeal followed.[37]  On appeal, Havard argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider the opinion evidence regarding Havard's mental health impairments and improperly crafted his own lay RFC.[38]  This case is fully briefed and is therefore ripe for resolution.  For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.  Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[39]  Substantial evidence "does not mean a large or considerable amount of evidence, but

---

[36] Tr. 46.
[37] Doc. 1.
[38] Doc. 14.
[39] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[40]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[41]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[42]    However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[43]    The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[44]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such

---

[40] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[41] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[42] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[43] Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

[44] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[45]   Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[46]   Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[47]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[48]   Thus,

---

[45] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[46] Id.

[47] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[48] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

11

we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[49]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[50]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[51]

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which

---

[49] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[50] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[51] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

has lasted or can be expected to last for a continuous period of not less than 12 months."[52] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[53] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[54]

In making this determination, the ALJ follows a five-step evaluation.[55] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able

---

[52] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

[53] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

[54] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

[55] 20 C.F.R. §§404.1520(a), 416.920(a).

to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[56]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[57] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[58] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[59]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[60] If met, the burden then shifts to

---

[56]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

[57] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[58] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[59] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[60] *Mason*, 994 F.2d at 1064.

14

the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[61]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[62]   Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[63]

---

[61] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.
[62] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).
[63] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.    Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[64] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[65]   Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[66]

---

[64] *Biller*, 962 F. Supp. 2d at 778–79.
[65] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[66] *Burns,* 312 F.3d 113.

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[67]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[68]  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[69]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[70]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or

---

[67] 20 C.F.R. § 404.1520c(c).

[68] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

[69] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[70] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[71]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[72]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[73]    On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[74]

## D. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is

---

[71] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[72] *Mason*, 994 F.2d at 1066.
[73] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).
[74] *Cummings*, 129 F. Supp. 3d at 214–15.

18

"only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[75]   Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

The plaintiff contends that the ALJ did not properly analyze the opinions of Dr. Croyle and Dr. Havel, and if those opinions were properly credited, Havard's RFC would preclude the jobs identified at Step 5.[76] While we are inclined to agree that the ALJ's treatment of the opinion evidence is not supported by an adequate explanation, we find that any error in the treatment of this evidence was harmless.

The ALJ first found Dr. Small's opinion, which found mild mental health limitations, persuasive.  The ALJ explained that mild limitations were more consistent with the lack of mental health treatment and largely unremarkable mental status findings in the record.  The ALJ found the other two opinions, which found moderate to marked limitations, unpersuasive.   However, the ALJ appears to have

[75] *Biestek*, 139 S. Ct. at 1154.
[76] Doc. 14.

19

incorporated some of Dr. Croyle's limitations into the RFC despite finding her opinion unpersuasive. In this regard, we conclude that the ALJ's explanation appears to be somewhat lacking, as it is not entirely clear why the ALJ decided to incorporate these limitations when he found the opinion unpersuasive and inconsistent with the longitudinal record.

However, we conclude that any error in this regard is harmless. Social Security appeals are subject to harmless error analysis.[77] Under the harmless error analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding, . . ."[78] Here, Havard contends that had the ALJ properly considered the opinion evidence, he would have imposed a limitation to one-to-two-step tasks as set forth in Dr. Croyle's opinion. He asserts that such a limitation is inconsistent with the jobs identified at Step 5, and as such, consideration of Dr. Croyle's opinion requires a remand. But the ALJ did, in fact, impose a limitation to simple instructions in the RFC, although he did not use the precise words "one-

---

[77] *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).
[78] *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

to-two-step tasks."[79]  Accordingly, the plaintiff's argument that the ALJ failed to address this limitation is belied by the RFC that actually included the limitation to simple instructions.

The plaintiff also contends that such a limitation is inconsistent with the jobs identified by the VE because two of the three jobs require a reasoning level of 2, and a limitation to simple instructions conflicts with reasoning level 2 jobs.[80]  It is true that two of the jobs identified by the VE—router and collator operator—require reasoning level 2.[81]  However, a limitation to one- or two-step tasks can (but does not always) preclude jobs requiring reasoning level two, as such jobs require that an individual be able to carry out "detailed but uninvolved written or oral instructions."[82]  In this case, the hypothetical to the VE included the

---

[79] Tr. 30; *See* Tr. 83 (finding that the plaintiff "can understand, retain, and follow simple instructions (i.e., perform one and two step tasks).").
[80] Doc. 14 at 11.
[81] *See* Router, DICOT 222.587-038, 1991 WL 672123; Collator Operator, DICOT 208.685-010, 1991 WL 671753.  We note that the third job identified, mail clerk, requires reasoning level 3. *See* Mail Clerk, DICOT 209.687-026, 1991 WL 671813.
[82] See *Cowher v. O'Malley*, 2024 WL 3161865, at *9-10 (W.D. Pa. June 24, 2024); *see also Leach v. Kijakazi*, 70 F.4th 1251, 1257 (9th Cir. 2023) ("A level-two job with 'detailed but uninvolved . . . instructions' could require an employee to follow lengthy simple instructions. On the present

limitation to simple instructions, and the VE testified that Havard could perform these occupations.[83]  In this regard, "[the Commissioner can [] rely on testimony from a VE to meet its step-five evidentiary burden."[84] And the plaintiff's counsel did not object to the qualifications of the vocational expert at the administrative hearing.  Accordingly, because the limitation to simple instructions was included in the hypothetical to the VE, we conclude that the ALJ was entitled to rely on this VE testimony that Havard could perform the jobs identified at Step 5. Accordingly, a remand is not required.

While we have found that the ALJ's consideration of the opinion evidence was error, we further find that the error was harmless. Accordingly, we will affirm the decision of the Commissioner in this case.

---

record, then, we cannot determine whether the level-two jobs identified by the vocational expert require only short, simple instructions."); *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019) ("We believe that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions.").

[83] Tr. 58-59.

[84] *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (citing 20 C.F.R. § 404.1566(e)).

22

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 6th day of July 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge
